liGASKINS, Judge.
The plaintiff, American Bank and Trust Company, appeals a trial court judgment finding invalid an appraisal of the defendant’s property, seized and sold by the plaintiff in satisfaction of a debt. The trial court found that, due to the invalid appraisal, the plaintiff was not entitled to a deficiency judgment against the defendant. For the following reasons, we affirm the trial court judgment.
BACKGROUND FACTS
The present case arises from a 1987 loan from American Bank and Trust to the defendant for the purchase of immovable property in Bossier Parish. Although not necessary to the decision of this case the background facts are as follows. On July 23, 1976, the defendant, Anna Jeanne Moore Price, married Harold Gene Evans. This marriage was purportedly undertaken by Ms. Price under duress, due to threats by Mr. Evans. Ms. Price and Mr. Evans never lived together. In 1981, Ms. Price moved to Dallas. However, she did not pursue a termination of the marriage at that time due to the threatening atmosphere created by Mr. Evans. According to Ms. Price, Mr. Evans had a prior unterminated marriage. On April 8, 1987, Ms. Price obtained an annulment of the marriage in Texas.
During the course of the marriage, Mr. Evans frequently borrowed money from American Bank and Trust Company (which later became Tri-State Bank and Trust). American Bank and Trust Company (the Bank) required Ms. Price’s signature on the loan documents as the spouse of Mr. Evans. Ms. Price signed these documents, as requested, but claimed that she never received any proceeds from the loans. Ms. Price testified that she signed loan documents for Mr. Evans in 1982 and in 1985. She testified that the proceeds of the loans went to Mr. Evans for his business enterprises.
In 1986, Ms. Price signed a promissory note with Mr. Evans, secured by a mortgage on Mr. Evans’ house. Ms. Price stated that she signed the note because |2she was afraid not to. Ms. Price again testified that she did not receive any of the proceeds from this transaction. Some payments were made on the 1986 note by companies owned by Mr. Evans.
PRESENT LOAN
When the 1986 loan fell into default, the Bank looked to Ms. Price for payment. She testified that Carl E. Matthews, an officer of the Bank, contacted her and proposed a plan to satisfy the debt. According to the plan, the Bank would refinance the 1986 loan by making a new loan to Ms. Price. The pro *538 ceeds of the new loan would be used to purchase Mr. Evans’ house. Mr. Evans would then vacate the house and the property would be sold to repay the Bank. This plan was implemented on October 16, 1987. The Bank loaned Ms. Price $47,065.81 for the purchase of the house.[1] The loan was secured by a mortgage on the house. A cash sale deed was executed conveying the house from Mr. Evans to Ms. Price. The record shows that proceeds of the new loan to Ms. Price were used to pay off a second mortgage on the house held by the Bank as well as a first mortgage in favor of another mortgage company.
Contrary to the plan, it appears that Mr. Evans continued to live in the house and the property was not immediately seized and sold by the Bank. It appears that some payments were made on Ms. Price’s loan. Her loan then fell into default. On February 11, 1988, Ms. Price was contacted by Mr. Matthews and informed that the loan was past due. On January 18, 1989, the Bank instituted executory proceedings against Ms. Price to seize and sell the house in satisfaction of her debt, with the benefit of appraisal. The Bank alleged that $46,755.44 was [ sdue on the debt, as well as $8,198.30 in interest. The Bank chose its officer, Mr. Matthews to appraise the property. He valued the house at $40,000. Bill Hearn, an appraiser appointed by the Bossier Parish Sheriff’s Office to represent Ms. Price, valued the property at $42,000. The house was sold for $27,384. After the payment of fees and costs, $26,-142.38 was applied to the debt. The Bank then converted the matter to an ordinary proceeding in order to obtain a deficiency judgment against Ms. Price.
Ms. Price answered the Bank’s claim for deficiency judgment, arguing that the house was sold without a legal appraisal. She asserted that the Bank’s appraiser, Mr. Matthews, employed by the Bank primarily as a loan officer, was not trained in real estate appraisals and further, that he did not enter the house prior to making the appraisal. The defendant also pointed out the disparity in the earlier appraisal of the house made in 1985. At that time, the property was appraised at $80,000. When the Bank seized and sold the house in 1989, it appraised at only $40,000. The defendant asserted that, because the appraisal was not properly made, the Bank is not entitled to deficiency judgment. Ms. Price also asserted that the promissory note which formed the basis of this action was invalid and unenforceable by reason of lack of legal consent, duress, error, mistake and/or misrepresentation.
The matter was tried on November 5, 1994. On March 16, 1995, the trial court issued reasons for judgment, finding in favor of Ms. Price. The court found that the appraisal by the Bank was not valid for the purpose of rendering a default judgment against the defendant. One factor considered by the court was that Ms. Price’s involvement in the loan transactions occurred only because of her questionable marriage to Mr. Evans. The court found that the Bank devised the plan in 1987 for the repayment of Mr. Evans’ loan and that Ms. Price had little, if Uany, understanding regarding the various documents she signed. However, the trial court found that Ms. Price’s lack of understanding of the documents she signed was not a defense.
The court also noted that Ms. Price did not receive any benefit from the loans. The trial court found that there was “some question as to whether or not, based upon Mr. Evans’ prior conduct, Ms. Price might have been under some threat or duress to sign the various documents.” However, the court did not rule on the defendant’s allegation that the promissory note was invalid because of lack of legal consent, duress, error, mistake and/or misrepresentation.
The trial court found that the Bank’s appraiser, Carl Matthews, was not qualified to make an appraisal of this property. The trial court noted that Mr. Matthews was the bank officer responsible for the loan and that it was to his employer’s benefit to receive the *539 largest deficiency judgment possible against Ms. Price. The court found that this posed a conflict of interest for Mr. Matthews in appraising the property. The court noted that Mr. Matthews was not a licensed appraiser and had no formal training in making appraisals. The court also found that Mr. Matthews did not view the interior of the house prior to making the appraisal. The court noted the disparity between the 1985 appraisal and Mr. Matthews’ appraisal in 1989. Based upon these factors, the trial court found that the appraisal was invalid and the Bank was not entitled to a deficiency judgment against the defendant. The court found that, although the proceeds of the sale were insufficient to satisfy the debt for which the property was sold, nevertheless the debt stood fully satisfied and the defendant was discharged as to any personal obligation owed to the Bank. On April 7,1995, the trial court signed a judgment dismissing the plaintiffs deficiency judgment claim against the defendant, with prejudice. The Bank appealed the trial court judgment.
^VALIDITY OF APPRAISAL
The Bank argues on appeal that the trial court erred in finding Mr. Matthews to be unqualified to make a valid appraisal of the property in question and in finding that the appraisal in this case was invalid. The Bank argues that Mr. Matthews qualified as an appraiser by virtue of his sixteen years experience in the financial field and met the requirements imposed by the jurisprudence for an appraiser.
Legal Principles
La.C.C.P. Art. 2723 provides in pertinent part:
Prior to the sale, the property seized must be appraised in accordance "with law, unless appraisal has been waived in the act evidencing the mortgage, the security agreement, or the document creating the privilege and plaintiff has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for....
La.C.C.P. Art. 2771 provides in pertinent part:
Unless otherwise provided by law, the creditor may obtain a judgment against the debtor for any deficiency due on the debt after the distribution of the proceeds of the judicial sale only if the property has been sold under the executory proceeding after appraisal in accordance with the provisions of Article 2723.
The Deficiency Judgment Act, La.R.S. 13:4106 provides in pertinent part:
Unless otherwise provided by law, if a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency....
La.R.S. 13:4363 provides in pertinent part:
Not less than seven days, exclusive of holidays, before the sale of the seized property, the sheriff shall serve written notice on the debtor and on the seizing creditor, in the manner provided for service of a citation, directing each to name an appraiser to value the property | ¡¡and to notify the sheriff of his appointment prior to the time stated in the notice, which shall be at least four days, exclusive of holidays, prior to the time of the sale.
La.R.S. 13:4364 provides:
A. If a party neglects to appoint an appraiser or to notify the sheriff within the time designated, the sheriff shall appoint an appraiser for him.
B. The appraisal of any appraiser appointed by the sheriff shall be made and delivered to the sheriff at a time prior to the sale.
The Louisiana legislature enacted the Deficiency Judgment Act in order to protect debtors from excessive liability when a creditor has mortgaged property sold without appraisal under executory process. Therefore, *540 the consequence of selling seized property without appraisal is clear; the debt shall be considered fully satisfied and discharged. Bank of Commerce and Trust Company v. Landry, 610 So.2d 927 (La.App. 1st Cir. 1992), writ denied, 612 So.2d 82 (La.1993).
Lack of compliance with the statutory requirements for appraisement precludes a deficiency judgment. First Federal Savings and Loan Association of Lake Charles v. Morrow, 469 So.2d 424 (La.App. 3d Cir.1985), writ denied, 474 So.2d 1304 (La.1985). A creditor may obtain a deficiency judgment only if the property has been sold in an executory proceeding after an appraisal in accordance with law. No deficiency judgment can be obtained if the sale is made without appraisal. Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132 (La.App. 1st Cir.1988), writ denied, 532 So.2d 150 (La.1988). A judicial sale conducted under an invalid appraisal is indistinguishable from a sale made without appraisal. Bank of Commerce and Trust Company v. Landry, supra.
Where the sheriffs return of the judicial sale shows on its face that all of the requirements for appraisal were met, it will be presumed that there was a legal appraisal, unless the contrary can be proved by the debtor. First Federal Savings and Loan Association of Lake Charles v. Morrow, supra; Calcasieu Marine \ ^National Bank of Lake Charles v. Miller, 422 So.2d 558 (La.App. 3d Cir.1982), writ denied, 429 So.2d 153 (La.1983); Bank of New Roads v. Livonia South, Inc., supra. The burden of proof upon a party challenging the sale is to show that there was a fundamental defect in exec-utory process. This constitutes a valid defense to a subsequent suit for deficiency judgment. Thus, an unqualified appraiser is a fundamental defect rendering the sale without appraisal. John Deere Company v. Loewer, 505 So.2d 973 (La.App. 3d Cir.1987). Since plaintiffs must prove there was a valid appraisal in order to obtain a deficiency judgment, the defendant’s failure to attack the appraisal process during the executory process does not bar her from raising the issue in the suit for deficiency judgment. Ray v. Varwig, 93-533 (La.App. 3d Cir. 8/3/94), 641 So.2d 711, writ denied, 94-2268 (La. 1/13/95), 648 So.2d 1336.
The statutes contemplate that the appraisal be made by appraisers who are competent by education and/or experience to appraise the particular object to be sold. Louisiana National Bank v. Laborde, 527 So.2d 41 (La.App. 3d Cir.1988); Citizen’s Bank of Ville Platte v. American Druggists Insurance Company, 471 So.2d 1119 (La.App. 3d Cir. 1985). There is no requirement in the law that the appraisers be “disinterested persons.” Plauche-Locke Securities Inc. v. Johnson, 187 So.2d 178 (La.App. 3d Cir. 1966); Consolidation Loans Inc. v. Guercio, 200 So.2d 717 (La.App. 1st Cir.1966). Even a party to a suit for deficiency judgment may act as an appraiser. La.R.S. 13:4366; Bank of Commerce and Trust v. Landry, supra.
Discussion
The Bank argues that its appraiser, Mr. Matthews, was well qualified by virtue of his sixteen years experience in the financial field to make an appraisal of this property. The Bank also argues that Mr. Matthews had made appraisals of | ^property in other parishes in connection with sheriffs sales throughout his career. It contends that Mr. Matthews had been employed from 1990 to present as a contract specialist with the FDIC. He had attended college periodically in the 1960s and was employed by Commercial Securities in Shreveport from 1973-1977 making consumer loans, some of which were secured by small second mortgages. He was employed by People’s Bank from 1977-1979 making consumer loans. Mr. Matthews was employed by United Mercantile Bank from 1979-1983 making consumer loans secured by real estate mortgages. He was employed by American Bank from 1983-1990 as a branch manager and a commercial lender. The Bank argues that the trial court erred in finding Mr. Matthews to be unqualified to make an appraisal of the subject property.
The trial court was influenced by the fact that Mr. Matthews worked for the Bank, arranged the loan to Ms. Price for the purchase of the house and also made the appraisal of the property that was to be sold in satisfaction of her debt to the Bank. As set forth above, the law does not require that an *541 appraiser be a disinterested person. He may, in fact, be a party to the litigation. Therefore, the trial court could not invalidate Mr. Matthews’ appraisal due to what it perceived to be a conflict of interest on Mr. Matthews’ part.
However, after reviewing the record, we do not find that the trial court erred in finding Mr. Matthews to be unqualified to make the appraisal by virtue of his training and experience. Even though Mr. Matthews may have been involved in some appraisals of property throughout his career, he did not testify that he had received training, formal or informal, in making appraisals of immovable property. His duties did not include regularly appraising real estate. In Mr. Matthews’ deposition, he stated that, as a general rule, he did not do property appraisals in connection with making loans. Regarding his experience in appraising property | gfor sheriffs sales in other parishes, Mr. Matthews was unable to state how many times he had made such appraisals, stating only that he had made “quite a few.” He also stated that he viewed these as an “estimate of value” rather than an appraisal.
Further, the trial court found that Mr. Matthews did not go into the house prior to making his appraisal. This fact is corroborated by Mr. Matthews’ testimony. He stated that he viewed the exterior of the house prior to appraising it and that he had seen the interior, but could not remember if this occurred before his appraisal. The Bank argues that it is not a requirement that an appraiser view the property to be appraised. The jurisprudence indicates that such a viewing is one favorable factor regarding the validity of an appraisal. Louisiana National Bank v. Laborde, supra; Ford Motor Credit Company v. Blackwell, 295 So.2d 522 (La. App. 4th Cir.1974); Delta Savings and Loan Association, Inc. v. Berthelot, 570 So.2d 459 (La.App. 4th Cir.1990); Citizen’s Bank of Ville Platte v. American Druggists Insurance Company, supra.[2]
In this case, Mr. Matthews’ deposition also demonstrates that he could not specifically show how he arrived at his appraisal. He stated that generally, he would do research to determine comparable property values and would consult with real estate appraisers. Mr. Matthews did not demonstrate that he took these steps prior to making this appraisal. He did not list the sources he examined, if any, to determine comparable values for the house at issue here. He did not state that he determined a general property value per square foot for homes in the area. Mr. Matthews also did not show that he consulted with a real estate appraiser or 110other knowledgeable participant in the real estate industry with regard to this house prior to making this appraisal. He stated that he did talk to a real estate appraiser about the house, but could not remember if he did this prior to making the appraisal at issue here. Mr. Matthews’ testimony was based upon a vague recollection of the proceedings. No documents were generated by this witness or the Bank to support his appraisal. These facts, coupled with Mr. Matthews’ statement that he could not remember if he viewed the interior of the house prior to estimating its value, support the trial court’s finding that the appraisal was invalid.
We do not here announce a bright line rule as to the steps an appraiser must take for a valid appraisal. Limited to the facts of this ease, we find that, given Mr. Matthews’ lack of education and experience in the appraisal of real estate and his vague testimony as to the manner in which he formulated his appraisal in this case, the trial court did not err in finding his appraisal to be invalid.
As discussed above, La.R.S. 13:4363 requires that, in order to obtain a deficiency judgment a minimum of two appraisals be made of the property. An appraisal must be made on behalf of both the creditor and the debtor prior to the sale of the property. This statute contemplates two valid appraisals before a deficiency judgment may be pursued. Lack of compliance with the statutory requirements for appraisal procedures *542 precludes a deficiency judgment. An unqualified appraiser is a fundamental defect in the proceedings rendering the sale without appraisal. Because Mr. Matthews was unqualified to make the appraisal on behalf of the Bank, the requirement of two appraisals in La.R.S. 13:4363 was not fulfilled. Therefore, we affirm the trial court judgment finding that, due to the invalidity of the Bank’s appraisal of the property at issue, the Bank is not entitled to a deficiency judgment against Ms. Price.
JnCONCLUSION
For the reasons stated above, we affirm the trial court judgment finding invalid the appraisal of the subject property made by Carl Matthews on behalf of the Bank. Accordingly, we find that the plaintiff, Tri State Bank and Trust, formerly known as American Bank and Trust, is not entitled to a deficiency judgment against the defendant, Anna Jeanne Moore Price. Costs in this court and in the court below are assessed against the plaintiff.
AFFIRMED.
MARVIN, C. J., dissents with written reasons.
liMARVIN, Chief Judge,
dissenting [Editor’s Note:] 
Believing the trial court was clearly wrong in its factual and legal conclusions, I respectfully dissent from the majority opinion affirming the trial court’s judgment. To reference my dissent I attach the trial court’s reasons for judgment and portions of the proces verbal of the sheriff’s sale.
The trial court placed undue emphasis on the fact that a [residence] would appraise by a licensed real estate appraiser for $80,-000 [in April 1985] and then a relatively short time later, at a sheriff’s sale [in June 1989], would appraise for only one-half th[at] value ...”
pp. 1-2, Trial court reasons.
The trial court said the above “fact required [it] to closely review all of the circumstances leading up to and including the bank’s [1989] appraisal.” p. 2 After the trial court reviewed those circumstances (Ms. Price’s “lack of total understanding of [what she signed for the bank]; [she] never received any money ... [or] benefited ... [and] might have been under some ... duress to sign the various documents ... coming ... from [her husband] ... Had the property sold [in 1989] for anywhere near the [1985] $80,000 appraised value she would not have owed any deficiency judgment”), the court concluded that the “situation described above is exactly what the legislature intended to prevent” by enacting the Deficiency Judgment law. p. 3.
Invalidating the bank’s appraisal for the 1989 sheriffs sale, the trial court stated that “additional factors” for doing so included “Matthews [the bank officer who made the appraisal] ... had a conflict of interest” because he made and serviced the loan and he did not view the interior of the home before making the appraisal. After considering the 1985 $80,000 FHA appraisal, which the trial court correctly described as “detailed, in-depth [with] ... a scaled floor plan, pictures, hand three comparable sales,” the court found the 1989 foreclosure appraisal “defective” and rendered judgment rejecting the creditor bank’s demands for deficiency judgment.
THE DEFICIENCY JUDGMENT LAW
The legal requirement that seized property be appraised and sold for two-thirds of its appraised value, which is the prerequisite to the creditor’s obtaining a deficiency judgment against the debtor for any balance remaining on the debt, was first enacted in 1934 during the depression. For the Deficiency Judgment law’s history, see University Prop. Corp. v. Fidelity Nat. Bank, 500 So.2d 888, 892-893 (La.App. 1st Cir.1986), writ denied.
The purpose of the law, now LRS 13:4106, which mandates strict compliance with notice and appraisal requirements for obtaining a deficiency judgment, is to protect the debtor from possible abuse, gross injustice or overreaching by a creditor which may occur if the property securing the debt *543 is sold without such notice or appraisal. In-temat. Harvester Credit Corp. v. Majors, 467 So.2d 1251 (La.App. 2d Cir.1985); G.M.AC. v. Mergist, 520 So.2d 1109 (La.App. 3d Cir. 1987), writ denied; First Nat. Bank of Hou-ma v. Bailey, 583 So.2d 559 (La.App. 3d Cir.1991).
To preserve its right to a deficiency judgment, the creditor must act in substantial, but not necessarily flawless, compliance with the statute. In other words, not every defect in the executory proceeding, but only a fundamental or obviously prejudicial defect will bar the deficiency action. Citicorp Acceptance Co., Inc. v. Roussell, 601 So.2d 350 (La.App. 1st Cir.1992), writ denied; Whitney Nat. Bank v. FWF, Inc., 93-1152, 93-1153 (La.App. 4th Cir. 3/29/94), 635 So.2d 361, writ denied. A fundamental defect, as in an appraisal, necessarily entails | ^unfairness, injustice or prejudice to the debtor. See and compare Williams v. Perkins-Siegen Partnership, 93-2131 (La. 1/27/95), 649 So.2d 367; John Deere Co. v. Loewer, 505 So.2d 973 (La.App. 3d Cir.1987); and Associates Discount Corp. v. Bankston, 246 So.2d 335 (La.App. 1st Cir.1971), writ denied.
One whose property has been sold by executory process with benefit of appraisal may attack the appraisal of the property in the creditor’s later ordinary action for a deficiency judgment. Because a sale with proper notice and with benefit of appraisal that is valid on the face of the executory process and sheriffs record, is legally presumed to have been conducted as the law directs, she who asserts the lack of qualifications of the appraisers bears a burden of proof which the case law has consistently said to be a heavy or substantial burden. See Associates Discount Corp. v. Bankston, cited supra; Ford Motor Credit Co. v. Blackwell, 295 So.2d 522 (LaApp. 4th Cir.1974), writ denied; and Calcasieu Marine Nat. Bank v. Miller, 422 So.2d 558 (La.App. 3d Cir.1982), writ denied.
A debtor’s mere supposition or argument that the appraisal is or was unfairly or unjustly prejudicial to the debtor and thus invalid, without some evidence to establish that fact, will not be deemed to satisfy the substantial burden of proof and rebut the presumption that the sale was conducted as the law directs. Whitney Nat. Bank v. FWF, Inc. and Calcasieu Bank v. Miller, both cited supra; Stockman v. Money, Inc., 277 So.2d 504 (La.App. 1st Cir.1973), writ not considered.
DISCUSSION
The sale here, including the appraisal and proces verbal, is clearly valid on its face. Ms. Price thus had the heavy burden of rebutting the legal presumption of validity.
I4AS the majority opinion correctly states, Matthews’ employment by the bank did not disqualify him from appraising the property for the bank. The issue whether Matthews’ appraisal was valid thus turns on his general qualifications to appraise real estate and the method he used to estimate the value of the property in his formal “appraisal.” Experience alone has been held to be sufficient to qualify one who appraises property at a sheriffs sale. Stockman v. Money, Inc., supra; Louisiana Nat. Bank v. Laborde, 527 So.2d 41 (La.App. 3d Cir.1988).
The only evidence offered by Ms. Price to impeach Matthews’ qualifications was Matthews’ deposition testimony. The appraisal sheet and proces verbal of the 1989 sheriffs sale, and the 1985 FHA appraisal are also pertinent.
MATTHEWS’ TESTIMONY
Mr. Matthews said he was 44 years old when he testified by deposition in October 1994 about his 1989 sheriffs sale appraisal for the creditor bank. I summarize and emphasize his testimony:
After about 1⅜ years of college and four years in the Air Force, he began working for a finance company in 1973, eventually rising to the position of manager, making loans, including loans secured by real estate mortgages [“probably less than 10 percent”]. Beginning in 1977 he worked for successive bank employers in Shreveport as “loan officer, assistant branch manager,” making secured loans on movables [first about 80 percent] and on immovables [“maybe 20 percent”] until 1990 when he *544 went to work for FDIC. As the creditor-bank’s employee, 1983-1990, Matthews was “heavier” in real estate loans [“say 40 percent”] and was responsible for foreclosing and managing foreclosed assets, including real estate.
Acknowledging that he had not been trained or formally educated in the “appraisal process,” Matthews said he made “informal appraisals” before “giving the loan.” He also did “appraisals” in real estate foreclosures for the banks, distinguishing that appraisal as an “estimate of value at the Sheriffs office where it is required that a value be given prior to foreclosure” from a “written research document such as a Fannie Mae or a certified appraiser would give you, [which] ... is not required, I don’t believe, in the foreelo-sure Isprocess_ I would call that [estimate of value] an appraisal in a foreclosure process.”
Matthews said he had made real estate foreclosure “appraisals” or estimates of value in Bossier, Caddo and Webster parishes, “quite a few, and I have never been questioned on any of those up [to] this point [in 1994].” Matthews recalled in 1994 that he looked at the house in 1989 before he made his appraisal and found the exterior condition “extremely distressed ... fascia boards and cornice rotted ... roof ... in poor shape ... yard not cared for ...”
Matthews explained that he “always” made foreclosure appraisals after viewing the property and doing some “research,” such as telephoning licensed appraisers and discussing “sales in the area” and “determin[ing minimum] comparables.” He said “I have done it many, many times [in the above described fashion] and have always done it through research and discussion ... not out of the blind. Lack of education may be a problem, but I have the experience that I have done it in the past, and it has never been questioned by anyone throuyh court ... So, I mean, I don’t know how else to answer your question [about whether I checked comparables or talked to one or more licensed appraisers before making the appraisals].”
OTHER EVIDENCE
The sheriffs appraisal sheet in the foreclosure action shows that Matthews made his appraisal ($40,000) on June 21, 1989. After Ms. Price failed to appoint an appraiser within the statutory time frame, the sheriff followed the law and appointed an appraiser for her, Bill Hearn. LRS 13:4364. Mr. Hearn made his appraisal ($42,000) on June 27, 1989.
The sheriffs proces verbal of the sale clearly indicates that the sheriff averaged the two appraisals, as LRS 13:4365(B) directs, to reach a value of $41,000, two-thirds of which is slightly less than the amount bid for the property |6($27,334). The $27,334 amount bid was declared in the proces verbal as “being two-thirds or more of the appraised value.”
The June 1989 foreclosure sale with benefit of appraisal is thus, in my view, valid on its face and must be presumed to have been conducted in accordance with the law. See and compare Stockman v. Money, Inc. and Whitney Nat. Bank v. FWF, Inc., both cited supra.
CONCLUSION
I conclude on this record that Ms. Price did not meet her substantial burden in this case for these reasons:
Matthews alone presented testimony about his qualifications and explained why and how he reached his $40,000 appraisal in 1989 after the property had. been formally appraised in 1985 at twice that much by a licensed FHA appraiser. The trial court did not make a credibility call, if one was available to it. Ms. Price did not show that the value of her home in the real estate market had increased or remained the same in 1989 when compared to 1985.
With 13 years experience working for banks, making secured real estate loans, also making “many, many appraisals” for foreclosure sales in three parishes (1977-1990), Matthews was qualified to serve as the bank’s appraiser at the foreclosure sale with benefit of appraisement. His experience also qualified him to work for FDIC since 1990 as *545 a “contract specialist” overseeing the procurement and management of assets and appraisals of FDIC properties.
The conclusion that Matthews’ appraisal was an invalid, defective appraisal because he was “not qualified” is clearly wrong. Especially is that conclusion clearly wrong in the light of the appraisal of Mr. Hearn, whom the sheriff appointed to appraise the property for Ms. Price. Hearn’s appraisal of $42,-000 was ^averaged by the sheriff with Matthews’ appraisal to reach the value ($41,000) used by the sheriff to calculate the minimum two-thirds bid price required by the statute. Ms. Price does not suggest that Hearn’s appraisal was unjust, unfair or fundamentally defective. The presumption arising from a foreclosure sale valid on its face applies equally to Hearn’s appraisal and qualifications and to Matthews’ appraisal and qualifications.
No evidence whatsoever was presented by Ms. Price to overcome the presumption and show that either was not a qualified appraiser or that either appraisal ($42,000 or $40,-000) was somehow “defective,” as the trial court labeled Matthews’ appraisal. The de minimus difference in the two appraisals required the sheriff to average the two, as the statute clearly directs.
To overcome the presumption of validity of the appraisal process a defendant in a deficiency judgment action must show that the appraisal was fundamentally defective, i.e., an unjust, unfair appraisal by an unqualified appraiser without visual knowledge of the physical condition of the property. John Deere Co. v. Loewer, supra. I paraphrase the observation made in John Deere: This record shows that Matthews was qualified because of his intimate experience dealing with the property before and after Ms. Price last refinanced the bank loan in 1987, and his visual knowledge of the physical condition of the exterior of the property in 1989. 505 So.2d at 976.
Neither Hearn’s $42,000 appraisal nor Matthews’ $40,000 appraisal is shown on this record to have been fundamentally defective, unjust, unfair and made without visual knowledge of the physical condition of the property. The soundness of this conclusion is illustrated by summarizing the evidence in some of the deficiency judgment or mortgage foreclosure cases in which an appraisal was | gfound fundamentally unjust, unfair, as compared with the lack of evidence in cases where the appraisal was not:
OTHER CASES COMPARED
In Citizens Bank v. American Druggists Ins. Co., 471 So.2d 1119, 1121 (La.App. 3d Cir.1985), the appraisal made by a clerical employee of the sheriffs office, who had “absolutely no schooling or experience in appraising vehicles and in fact did not even see or inspect the car,” was found to be invalid. Similarly, in Ford Motor Credit Co. v. Blackwell, cited supra, the “book value” appraisal of a truck, made without a visual inspection and without allowances for the truck’s optional equipment and above-average condition, was found to be a fundamental defect, barring a deficiency judgment.
On the one hand, the debtors in Bank of Commerce and Trust Co. v. Landry, 610 So.2d 927 (La.App. 1st Cir.1992), writ denied, successfully defended against a deficiency judgment action by proving that only four of the five apartment buildings sold in the facially valid sheriffs sale were included in the $240,000 appraisal. Affirming, the appellate court found the appraisal’s omission of the one apartment building was not a “minor defect in the appraisal process,” but resulted in an untrue and unjust appraisal of the five properties, each of the four units having been appraised at $60,000 to reach the $240,000 valuation. On the other hand, the failure to separately appraise multiple pieces of property in a foreclosure action, while technically a violation of LRS 13:4365(C), may not be a fundamental defect, i.e., unjust or unfair. Reversing the lower courts, which had ruled in favor of the debtors, the supreme court stated in Williams v. Perkins-Siegen Partnership, cited supra:
Is ... Separate appraisals of the three contiguous tracts would not have resulted in a greater cumulative appraised value than that obtained through in globo valuation. In fact, the converse would have been true, as both of the appraisers testi- *546 fled that their appraisals resulted in the highest possible value of the subject tracts. Accordingly, requiring “minute appraisals” [under § 4365(C) ] in this case would in no way have increased the amount realized upon sale of the property, nor would it have decreased the amount of the deficiency judgment faced by [the debtors].
[The creditors], when presented with a challenge to their right to a deficiency judgment on the basis of alleged defects in the appraisal process, met the challenge by clearly showing that the [debtors] were in no way prejudiced by the in globo appraisals of the mortgaged property, and that the purpose of the appraisal process was served. [The debtors] failed to rebut this showing and, in fact, failed to offer any evidence that separate appraisals would have resulted in a higher cumulative valuation of the ... tracts. We therefore hold that the failure to conduct separate appraisals in this case does not bar [the creditors] from obtaining a deficiency judgment.
93-2131 at p. 5; 649 So.2d at 370. Emphasis and brackets added.
Other cases have upheld appraisals made by deputy sheriffs who were alleged to be unqualified. See Stockman v. Money, Inc. and Louisiana Nat. Bank v. Laborde, both cited supra. The deputy in Stockman, appointed after the creditor and the debtor submitted widely divergent appraisals to the sheriff ($60,000 and $103,000, respectively), had made more than 150 real estate appraisals during his eight years with the sheriffs office and was familiar with comparable sales in the area when he visually inspected the seized property. His $75,000 appraisal was within $500 of the “exhaustive” appraisal later made by an independent professional appraiser shortly before trial of the debtor’s action to set aside the sheriffs sale. In Laborde, the appellate court reversed the trial court’s dismissal of a deficiency judgment action, finding clear error in the trial court’s ruling that a deputy sheriff, who had appraised mobile homes for six years and who personally | ^inspected the debtors’ mobile home, lacked the qualifications and experience to render a valid appraisal.
Nothing in this record supports the conclusion that either Matthews or Hearn was an unqualified appraiser or that their respective appraisals were unjust, unfair or prejudicial to Ms. Price, fundamentally defective. Nothing in this record suggests that neither appraiser viewed at least the exterior of the property [indeed, Matthews described its exterior condition at the time of his appraisal]. Nothing in this record overcomes the presumption of the facially valid appraisals and proees verbal. Even should I agree with the trial court’s implied conclusion that the property could not and should not be fairly, truly, justly appraised at an average of $41,000 by two appraisers in 1989 when that same property was appraised four years earlier in the 1985 FHA detailed appraisal at $80,000, that conclusion is nothing more than mere supposition or argument that the appraisal process was unfair or unjust or prejudicial to the debtor. Without supporting evidence establishing the fact, a trial court’s supposition will not be deemed to satisfy the legal burden of proof required to overcome the presumption that the facially valid sale, including the appraisal process, was conducted as the statutes direct. Whitney Nat. Bank v. FWF, Inc.; Calcasieu Bank v. Miller, both cited supra.
Nothing in the record contradicts Matthews’ description of the exterior of the house and yard as he viewed it in 1989 before he made his appraisal. Boards do rot in a short period of time. The yard and the roof of a home also visibly deteriorate in a few years period. It cannot be presumed that either appraiser was not qualified or that Hearn did not see the same exterior conditions that Matthews saw in 1989, six days before Hearn made his appraisal.
| nThe sole basis for Ms. Price’s argument or assertion of prejudice, and the apparent basis of the trial court’s judgment, is the $80,000 FHA appraisal made four years before the sheriff’s sale in 1989. This record does not contain evidence, however, that the property was unjustly or unfairly valued at the time of the sheriff’s sale in 1989.
On this record, Ms. Price has not met her legal burden of producing evidence to establish that the sheriffs sale, including the appraisal process, was fundamentally defective *547 [unfair, unjust and prejudicial] and to overcome the presumption that the sale with appraisal was conducted as the statutes direct.
As the cases discussed and cited dictate, I would reverse and render judgment for the appellee as the appellate courts and the supreme court have done in similar situations.
*548 Jl2
APPENDIX
[[Image here]]
*549 [[Image here]]
*550 | i4Number 76,191
26TH JUDICIAL DISTRICT COURT BOSSIER PARISH, LOUISIANA
American Bank & Trust Company (now known as Tri-State Bank & Trust Company) versus Anna Jeanne Moore Price
[Filed March 16, 1995]

OPINION

This case was tried on November 5, 1994. The matter was taken under advisement with each counsel to submit a brief supporting his contention. The briefs have been received and reviewed.

FACTS

This suit is based upon a promissory note secured by the pledge of a collateral mortgage executed by the defendant, Anna Jeanne Moore Price. The note and mortgage are dated October 16, 1987. The property mortgaged was a three-bedroom brick home located on a three-acre tract of land near Haughton, Louisiana. The property had been appraised by a licensed real estate appraiser for $80,000.00 less than two years before Ms. Price mortgaged it to the bank.
On January 19,1989, the bank commenced an action against Ms. Price by executory process ultimately resulting in the property being seized, sold at sheriffs sale and this attempt to obtain a deficiency judgment against Ms. Price. In order to obtain the deficiency judgment the bank is required to appraise the property. ' An employee of the bank, Carl E. Matthews, “appraised” the property at $40,000.00, which resulted in the property being sold at a foreclosure sale on June 28, 1989, for a bid of $27,334.00 to the bank. The bid amount was two-thirds of the appraised value.
Without anything more, the fact that a residential dwelling would appraise by a licensed real estate appraiser for $80,000.00 and then a relatively short time later, at a sheriffs sale, appraise for only one-half the value would at the very least |15require the court to closely review all of the circumstances leading up to and including the bank’s appraisal.
In this case there are numerous factors that lead the court to the opinion that the appraisal done by the bank should not be considered valid for the purpose of rendering a deficiency judgment against the defendant.
It is quite obvious that the only reason Ms. Price was ever involved in any of these proceedings is because of her questionable marriage to Harold Gene Evans. Ms. Price married Mr. Evans on July 23, 1976. She testified that the parties never lived together as husband and wife. The marriage was subsequently declared null and void by a Decree of Annulment dated April 8, 1987. One of the grounds for the annulment was the existence of a prior, undisclosed marriage on the part of Mr. Evans.
During the time Ms. Price was married to Mr. Evans she was contacted on more than one occasion by the bank who would inform her that since she was Mr. Evans’ wife it would be necessary for her to come to Shreveport to sign certain documents regarding Mr. Evans’ financial dealings. In an • effort to accommodate Mr. Evans and the bank, Ms. Price would sign the documents presented to her.
In 1987, based on Mr. Evans’ failure to pay the bank, a foreclosure action was filed against Mr. Evans and Ms. Price. Ms. Price again was called to Shreveport and was told that she was responsible for the repayment of the Evans loan from the bank and was told of a plan whereby the property in question would be conveyed from Evans to her and then mortgaged to the bank again for a new loan and the proceeds would go toward paying off the old loan. She agreed to do this and once again signed the documents presented to her. Adequate payments were not made on the loan and the suit for executory process followed resulting in the property being seized and sold as described above.
|16The facts as above described by the court, together with the live testimony of Ms. Price, convince the court that Ms. Price had little, if any, understanding regarding the various documents she signed. Although her lack of total understanding of the documents *551 is not a defense, it certainly is a situation where things necessary to obtain a deficiency judgment against her should be done exactly according to law.
The court is convinced, in fact it is really not at issue, that Ms. Price never received any money from any of the various loans and never in any way benefited from any of the various loans, but merely signed the documents to appease her estranged husband. There is also some question as to whether or not, based on Mr. Evans’ prior conduct, Ms. Price might have been under some threat or duress to sign the various documents (The threats or duress coming not from the bank but from Mr. Evans).
The evidence proves to the court that Ms. Price did know that the promissory note in question was secured by a mortgage on the residential dwelling and land appraised in 1985 for $80,000.00. Had the property sold at the sheriffs sale for anywhere near the $80,000.00 appraised value she would not have owed any deficiency judgment.
The court is firmly convinced that the situation described above is exactly what the legislature intended to prevent by enacting legislation requiring property to be appraised before a deficiency judgment can be rendered. This is particularly true in this case when the court finds as a matter of fact that the debtor, Ms. Price, had very little, if any, understanding of the proceedings, received no benefit from the various loans, and had no knowledge concerning the value of the residence other than the appraisal indicating the value to be $80,000.00.
Additional factors considered by the court in reaching its decision regarding the validity of the appraisal include, but are not limited to, the following facts: Mr. Matthews, whose [ i7appraisal is in question, was the bank officer responsible for this loan and had been the individual who contacted Ms. Price concerning payment of the loan. Obviously it was to his employer’s benefit to obtain as large a judgment as legally permissible against Ms. Price. The court is not suggesting that Mr. Matthews did anything unethical. However, he obviously had a conflict of interest regarding the appraised value. The court is well aware of cases that indicate an expert witness may testify even if he is a party to the litigation. However, the law is also clear that this may be given considerable weight by the court and this court in this ease chooses to do so. Mr. Matthews was not a licensed appraiser and had never received any formal training in the field of real estate appraising. Mr. Matthews testified that when he viewed the interior of the house there was no furniture in the house and it did not appear lived in when he first saw it. The facts are clear and the court finds factually that Mr. Matthews could not have viewed the interior of the home prior to making the appraisal because Mr. Evans continued to live in the home for some time after the appraisal had been submitted. Also, the court has closely reviewed the original appraisal report prepared by the licensed appraiser on which everyone relied in making the loans in question. This appraisal is a detañed, in-depth appraisal including a scaled floor plan, pictures, and three comparable sales. This appraisal indicates the home is a 2,014 square foot, three-bedroom brick home with central air and heat, containing an additional covered front porch and covered two-ear carport. It is difficult to understand how a residence such as this could have a value of $80,000.00 in 1985 and then only a $40,000.00 value in 1989.
Revised Statute 13:4106 et seq. make it clear that a deficiency judgment is prohibited if the sale is made without benefit of ap-praisement. This is a matter of public policy and cannot be waived (R.S. 13:4107). For reasons stated in this ligopinion, the court finds the appraisal done by the bank to be defective and, therefore, considers the execu-tory process and foreclosure proceedings to be done without benefit of appraisal thereby prohibiting them from obtaining a deficiency judgment against Ms. Price. The court specifically holds that although the proceeds of the judicial sale were insufficient to satisfy the debt for which the property was sold the debt nevertheless shall stand fully satisfied and that Ms. Price shall be discharged insofar as it constitutes any personal obligation owed the bank.
*552 THIS OPINION RENDERED at Benton, Bossier Parish, Louisiana, on this 14th day of March, 1995.
/s/ Bruce M. Bolin DISTRICT JUDGE
Before MARVIN, C.J., and SEXTON, HIGHTOWER, STEWART and GASKINS, JJ.

. The record includes an appraisal of the house made on April 25, 1985, more than two years prior to the sale to Ms. Price. At that time, the house was valued at $80,000. It appears that the house was again appraised in 1987 in connection with the new loan to Ms. Price. The 1987 appraisal is not included in the record.

. See also Patrick S. Ottinger, Enforcement of Real Mortgages by Executory Process, 51 Louisiana Law Review 87 (1990), stating that appraisers should personally examine and inspect the seized property and should possess some degree of knowledge and experience with regard to the type of property to be appraised.