822 So.2d 42 (2002)
Charles GILBERT
v.
Michael J. EVAN, Allstate Insurance Company, Kemper Insurance Company and American Motorist Insurance Company.
No. 2001 CA 1090.
Court of Appeal of Louisiana, First Circuit.
June 21, 2002.
*43 Douglas Greenburg, Houma, for Appellee Stephen Callahan.
Julius Hebert, Houma, for Appellant Patrick Yancy.
Mark Young, New Orleans, for Defendant American Motorist Ins. Co.
Before: GONZALES, KUHN, CIACCIO, JJ.[1]
CIACCIO, J.
This is a suit between two lawyers, Patrick Yancey and Stephen Callahan, arising out of a dispute over the division of a large fee earned in connection with a personal injury claim. Yancey appeals from a summary judgment in favor of Callahan that limited Yancey's portion of the fee to the hourly rate specified in his contingency fee contract. The trial court held that Yancey's contract with his client limited his attorney fees to an hourly basis once the relationship between him and his client ceased prior to a settlement or trial of the matter. We agree.

FACTS
In March 1998, Charles Gilbert and Michael Evan were involved in a motor vehicle accident. Gilbert retained Patrick Yancey as his attorney of record for the claim. Later that month, Yancey filed a petition on Gilbert's behalf seeking damages *44 against Evan and two insurance companies. In October 1998, Stephen Callahan filed a motion to enroll as Gilbert's counsel of record, stating that Gilbert had discharged Yancey. Thereafter, Yancey filed a petition for intervention contending that he had entered into a contingency fee contract with Gilbert, that Gilbert discharged him without cause, and that the court should render a judgment apportioning the fees between him and Callahan together with a reimbursement of his litigation expenses. Callahan had obtained a settlement of Gilbert's claim from which attorney fees of approximately $191,000 were collected.
Callahan filed a motion for summary judgment asserting he was entitled to the entire fee minus the portion payable to Yancey under the hourly language contained in Yancey's contingent fee contract with Gilbert. Callahan noted that the sixth paragraph of the contract stated that Yancey was entitled to recover attorney fees in the sum of $200 per hour in the event he was discharged as Gilbert's attorney prior to the settlement of the case or prior to trial. Because of that provision of the contract Callahan maintained that Yancey was only entitled to $2,390.35.[2]
The trial court granted Callahan's motion for summary judgment "as a matter of law based upon [Yancey's] contract of employment with [Gilbert]." The court found that the language of the contract was controlling and awarded Yancey $1,600.00 as attorney fees plus expenses in the amount of $790.35.
Yancey appeals contending the trial court erred: (1) in concluding that Yancey's contract was not a contingency contract; (2) in granting Callahan's motion for summary judgment, allowing Callahan to collect a contingency fee, but only awarding Yancey hourly fees; (3) in not determining the highest reasonable contingency fee based upon both contracts and in failing to apportion the fee in accordance with controlling jurisprudence, (4) in not holding a trial or allowing discovery; and (5) in not ordering the attorney fees to remain in trust pending an appeal.

ATTORNEY FEES IN TRUST PENDING APPEAL
Yancey argues the trial court should have recognized his right to a suspensive appeal and should have ordered that the total amount of attorney fees Callahan obtained be held in trust pending the appeal. In this appeal he does not cite any authority in support of this argument.
This assignment of error is moot. The funds that were in Callahan's trust account were released to him by the terms of the summary judgment. Yancey was given ten days to apply for supervisory writs to prevent the release of the funds to Callahan but he failed to do so. Once the funds were released to Callahan there was no judgment to suspend. Yancey was entitled to a devolutive appeal, which he perfected. This assignment of error has no merit.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same *45 criteria followed by the trial court. Sanders v. Ashland Oil, Inc., 96-1751, p. 7 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show there is no genuine issue of material fact and the mover is entitled to a judgment as a matter or law. La.Code Civ. P. art. 966(B). The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party submit evidence showing the existence of specific facts establishing a genuine issue of material fact. Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991.

ATTORNEY FEES
Yancey references case law that declares that attorney fees are subject to review and control by the courts. National Information Services, Inc. v. Gottsegen, 98-528, p. 15, (La.App. 5 Cir. 6/1/99), 737 So.2d 909, 919, writs denied, 99-1936, 99-2366 (La.10/8/99), 751 So.2d 226, 228. He also cites the "seminal case" concerning contingency fee contracts for attorneys discharged without cause, Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978). Saucier held that where more than one attorney is employed on a single case for a single client under multiple contingency fee contracts, only one contingency fee should be paid by the client. Saucier, 373 So.2d at 118 (on rehearing). The amount of the fee should be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which the client executed. Id. It is then the duty of the trial court to apportion the fee between both attorneys. Id. Thus, we must first determine whether Yancey's contract is a true contingency fee contract.
Yancey relies upon the following language from the contract between him and Gilbert to prove that they entered into a valid contingency fee contract:
I, (We) hereby agree to pay said attorney thirty-three and one-third (33 1/3%) percent of any settlement or judgment obtained in said case as the fee for his services.
The contract further stated:
My (our) attorney may be fired only for negligent handling of my (our) claim or failure to pursue my (our) claim with ordinary legal diligence. In all other cases, my (our) attorney is entitled to a full fee as outlined above for any settlement I(we) receive in the above matter, even though other counsel may be consulted or hired.
The contract revealed that the agreement between Gilbert and Yancey contained not only the standard contingency fee language, but also, in paragraph six, the following provision:
Notwithstanding the above, if Client discharges Attorney or otherwise terminates or discontinues this employment relationship prior to settlement or trial of said claim(s), then Client hereby agrees to pay Attorney the sum of Two Hundred and No/100 ($200.00) Dollars per hour for services performed by Attorney prior to written notification of said discharge. If Client discharges Attorney, or otherwise terminates or discontinues this employment relationship, after settlement is effected or trial of said claim(s), Client hereby agrees to pay Attorney, as provided his compensation herein, that undivided interest (percentage *46 contingency fee) as for hereinabove.
The language of the contract thus provides that, if a client discharges, terminates, or discontinues the employment relationship, prior to settlement or trial, the client agrees to pay an hourly fee of $200.00 an hour for those services performed prior to written notification of the discharge. This agreement exists "Notwithstanding the above" which means, if the conditions are met, that this provision supercedes all of the earlier above provisions, including the contingency fee agreement. The record established that Yancey was discharged as Gilbert's attorney prior to the settlement. Consequently, the hourly fee provision of the contract controls.
The courts have recognized a "hybridized contingent-hourly fee agreement" where a contract consists of contingency fee language together with hourly fee language. See Anderson, Hawsey & Rainach v. Clean Land Air Water Corp., 489 So.2d 928 (La.App. 5 Cir.1986). In Anderson the attorney was limited to a recovery of the hourly fee specified in the contingency fee contract. In this case, we are presented with such a contract.
Yancey contends that the Saucier case is the controlling authority for the recognition of his right to have the contingency fee apportioned between him and Callahan. The law is clear that parties are free to contract for any object that is lawful, possible, and determined or determinable, except for those instances where the government places restrictions for reasons of public policy. See La. Civ.Code. art.1971; Buck's Run Enterprises, Inc. v. Mapp Const., Inc., XXXX-XXXX, p. 5, (La. App. 1 Cir. 2/16/01), 808 So.2d 428, 432. There is no law prohibiting this hybrid contingency fee contract nor has any court declared such contracts invalid because they are against public policy.
Yancey drafted the contract and agreed to its terms. He provided the language that limited his recovery to his hourly fee should he be discharged prior to settlement. The language is clear and unambiguous. It is not subject to more than one interpretation. The trial court had a duty to enforce the clear language of the contract. There are no material issues of fact regarding the provisions of the contract and the motion for summary judgment was properly granted.

CONCLUSION
For the reasons assigned, the judgment of the trial court is affirmed. Costs of the appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Callahan attached to his motion for summary judgment various exhibits, including correspondence between him and Yancey. In a letter dated July 9, 1998, Callahan informed Yancey that Gilbert (and his wife, who later became an additional plaintiff in the amended petition) had retained him as counsel. Understanding that Yancey had previously been their attorney, Callahan requested an itemized list of fees and expenses owed. In a correspondence dated July 16, 1998, Yancey stated that in lieu of filing an intervention in this matter, he requested that Gilbert reimburse him for costs of $790.35 together with attorney fees of $1,600.00 accrued at a rate of $200.00 per hour, which totaled $2390.35.