PER CURIAM.*
_JjThis disciplinary matter arises from formal charges filed by the Office of Disci *1241 plinary Counsel (“ODC”) against respondent, Carla M. Gaston, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Count I — The Welch Matter
In 2004, Toni Welch hired respondent to represent her in ongoing litigation against the contractor who had built her home and the bank which had financed the construction. On February 27, 2004, Ms. Welch paid respondent $2,000 as an advance deposit for litigation-related costs and expenses. Respondent deposited this sum into her client trust account. On March 5, 2004, respondent and Ms. Welch signed a fee agreement which set forth the following terms:
[2.] Said services shall be provided on a contingency basis "with attorneys fee being no less than 10% and no more than 33% of the amount recovered plus expenses. Said fee shall be based upon the work performed and the needs of the client given the condition of the current residence. No up-front fee is required and none will be collected except for out-of-pocket expenses which shall be accounted at periodic times during the representation and upon the termination of the attorney-client relationship.
12[5.] Client has the right to cancel this agreement at any time during the period of representation. However, should client wish to terminate this agreement without cause, attorney will provide an accounting of the time spent on this matter and will have the right to compensation for said time spent at the rate of $125.00 per hour.
According to respondent, this unusual fee arrangement was necessary because Ms. Welch was not in a financial position to pay hourly fees, but she nonetheless wanted to make some stipulation for payment if respondent were discharged.
On August 31, 2004, while the civil litigation was still pending, respondent filed a Chapter 7 bankruptcy petition on Ms. Welch’s behalf. Respondent did not disclose in the bankruptcy filing her receipt of the $2,000 payment from Ms. Welch. Respondent also did not withdraw as Ms. Welch’s counsel of record in the civil cases.[2]
In April 2005, Ms. Welch terminated respondent’s representation in the civil litigation, claiming respondent was neglecting the matters. At this point in time, respondent had expended $669.93 of Ms. Welch’s $2,000 deposit for various costs associated with the bankruptcy filing ($209) and the civil litigation ($460.93). By letter dated April 30, 2005, respondent advised Ms. Welch that she intended to retain the remaining funds ($1,330.07) as her attorney’s fees, pursuant to the clause in paragraph 5 of the fee agreement.[3] However, respondent did not obtain Ms. Welch’s express approval or authorization to do so. Indeed, in February 2006, Ms. Welch wrote to respondent and requested that she pay the remaining funds to Lucy Sikes, the bankruptcy trustee in the Western District of Louisiana. Respondent also received | .^correspondence from Ms. Sikes seeking the return of the funds. Respondent did not reply to these requests, and she subsequently closed her client trust account *1242 without paying any sums to either Ms. Sikes or Ms. Welch.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II — The Johns Matter
In March 2004, Jane Johns hired respondent to represent her in divorce proceedings. Ms. Johns paid respondent $550.[4] Thereafter, respondent did some work in the matter but ultimately failed to finalize Ms. Johns’ divorce. In January 2006, Ms. Johns terminated respondent’s representation and requested a refund in the amount of $400. Respondent failed to comply with this request.
Soon thereafter, Ms. Johns filed a disciplinary complaint against respondent. In her written response to the complaint, dated July 26, 2006, respondent stated that even though she believed she had earned the fee paid by Ms. Johns, in an effort to resolve the complaint she would forward Ms. Johns a check in the amount of $400. Notwithstanding this representation, respondent failed to refund the $400. She also did not submit the matter to fee dispute arbitration.
I/The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5) (failure to refund an unearned fee), and 1.16(d).
DISCIPLINARY PROCEEDINGS
In September 2007, the ODC filed formal charges against respondent, which she initially failed to answer. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
The committee then issued a report and recommendation, based on the deemed admitted facts and the ODC’s deemed admitted submission on sanctions. Thereafter, respondent filed a response to the formal charges and a statement in mitigation of the sanction determination. She essentially denied the allegations of misconduct and listed several mental and physical health problems from which she has suffered or is currently suffering. She also provided the disciplinary board with her medical records.
Based upon respondent’s submission, the board determined she had previously been unable to meaningfully participate in the disciplinary proceedings. Accordingly, the board vacated the deemed admitted order and remanded the matter to the hearing committee for a formal hearing on the merits. The hearing committee conducted the hearing in May 2010, at which time respondent appeared and testified before the committee.

|sHearing Committee Report

After considering the testimony and evidence presented at the hearing, the hearing committee found that respondent testified with candor and was a credible witness. The committee also made the following factual findings:
The Welch matter — Despite never having handled this type of litigation, respon *1243 dent agreed to undertake the representation of Ms. Welch in the cases against the bank and the builder. The cases were previously being handled by other attorneys, but Ms. Welch no longer had the ability to pay hourly rates. Ms. Welch agreed to pay a $2,000 cost deposit and a one-third contingency fee to respondent upon recovery, if any. The contingency agreement also contained a provision for respondent to be paid $125 per hour for her time if she was discharged without cause.
Respondent immediately began working on the matter, reviewing documents, attending meetings, and attempting to obtain the former attorney’s files, which was not accomplished for several months. Within six months of respondent’s taking over the civil litigation, Ms. Welch was threatened with foreclosure on her home. Respondent advised that an injunction was not possible; therefore, she recommended bankruptcy to stop the foreclosure. Respondent filed the bankruptcy petition and paid the filing fee from the $2,000 deposit for costs, but advised Ms. Welch that she would need to seek permission from the bankruptcy trustee to continue the civil litigation. Respondent set status conferences to make sure the trial judge knew of the bankruptcy filing. However, she was never able to get the trustee’s approval to continue with the lawsuit. Nonetheless, Ms. Welch continued to press respondent to move the lawsuit forward. The trustee later elected to settle the lawsuit.
On April 25, 2005, Ms. Welch terminated respondent’s representation and asked for a refund of the unused portion of the cost deposit. Respondent informed Ms. Welch she would be keeping the unused portion as her attorney’s fee, pursuant |fito the condition in the contingency fee agreement, because she was discharged without cause. The money stayed in respondent’s trust account and was eventually subject to an income tax lien.
Respondent admitted that she erred in failing to disclose the cost deposit in the bankruptcy filing. The trustee learned of the funds and wrote to respondent on February 12, 2006, requesting an accounting. Respondent did not respond; therefore, the trustee filed a motion for an accounting on January 16, 2007.
Respondent testified at a hearing before the bankruptcy court on March 14, 2007, during which she provided information as to how she applied the funds to certain costs and attorney’s fees, pursuant to her interpretation of the contingency fee agreement. The bankruptcy court did not order her to pay the money to the trustee. Instead, the bankruptcy court issued an order requiring respondent to seek court approval before representing other debtors and issued an order that respondent file a motion to withdraw from Ms. Welch’s state court lawsuit.
Based on these facts, the committee determined respondent violated Rules 1.15 and 1.16(d) of the Rules of Professional Conduct because she did not have the authority to apply any portion of the cost deposit to her claimed hourly fees. However, the committee determined the ODC failed to establish that respondent violated Rules 1.3,1.4, and 8.4(c).
The Johns matter — On November 1, 2004, Ms. Johns hired respondent to represent her in divorce proceedings. Ms. Johns paid a $550 flat fee, inclusive of court costs. Respondent prepared and filed the divorce petition and had Mr. Johns served by November 8, 2004.
On May 10, 2005, respondent "wrote to Ms. Johns advising that she was closing her law office but would continue to handle the divorce matter. Respondent provided Lcontact information for her new location *1244 in Shreveport. Thereafter, problems in the attorney-client relationship began. Respondent and Ms. Johns testified differently regarding attorney-client contact. The committee was unable to fully judge Ms. Johns’ demeanor because she testified by telephone. However, the committee determined Ms. Johns’ testimony contained inconsistencies, both internally and with the written record, and seemed improbable in certain instances. Therefore, the committee found Ms. Johns a less credible witness than respondent.
On August 18, 2005, Ms. Johns wrote to respondent asking that her divorce be finalized. When Ms. Johns did not receive a response, she wrote a September 25, 2005 letter to the Louisiana State Bar Association (“LSBA”) asking for assistance in getting the matter resolved. Ms. Johns talked to respondent on September 27, 2005, and respondent told Ms. Johns she would mail the final divorce papers to sign and return. However, respondent mailed the documents to the wrong address because Ms. Johns had moved without informing respondent. The documents apparently never reached Ms. Johns. Instead of contacting respondent again, Ms. Johns hired a new attorney to finalize her divorce, paying him $125. The committee determined that any problems in communication or delay in completion of the divorce were not attributable to respondent.
On January 16, 2006, Ms. Johns wrote to respondent to terminate the representation and requested a $400 refund. Respondent was surprised by the letter because she had mailed the documents to Ms. Johns, and she believed the refund request was excessive as she had done the bulk of the work by preparing the final documents, which only needed to be executed and filed. However, respondent admitted she was not entitled to the entire fee, and that some portion of the fee should have been refunded to Ms. Johns.
|sThe ODC referred the matter to the LSBA’s Practice Assistance Counsel in an effort to allow respondent to resolve the fee dispute. However, respondent failed to respond to the LSBA, and the matter was returned to the ODC.
Based on these facts, the committee determined that respondent did not neglect her client’s legal matter or fail to communicate with her client, and therefore she did not violate Rules 1.3 and 1.4 of the Rules of Professional Conduct. However, the committee determined respondent did violate Rules 1.5(f)(5) and 1.16(d) because, when Ms. Johns terminated the representation, respondent had not seen the divorce matter through to completion. Therefore, she did not earn the entirety of the $550 fixed fee.
The committee further determined respondent intentionally violated duties owed to her clients, causing them actual harm. However, in the Welch matter, respondent’s conduct was based on a good faith belief that she had the right to apply the retainer to her hourly fee, and in the Johns matter, her conduct was based on the belief that the work would have been completed if Ms. Johns had returned the prepared documents for her to file. The committee determined that the baseline sanction for respondent’s misconduct is suspension.
The committee determined no aggravating factors are present. In mitigation, the committee found the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, and inexperience in the practice of law (as respondent had practiced only a few years in private practice).
In light of the ABA’s Standards for Imposing Lawyer Sanctions and this *1245 court’s prior jurisprudence involving similar misconduct, the committee recommended respondent be suspended from the practice of law for six months, fully deferred, subject to the condition that any misconduct by respondent •within one year |flof the finality of the court’s judgment may be grounds for making the deferred suspension executory or imposing additional discipline, as appropriate. The committee further recommended that respondent be ordered to make restitution to her clients.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.

Disciplinary Board Recommendation

After review, the disciplinary board determined the hearing committee’s factual findings are supported by the record and are not manifestly erroneous. Accordingly, the board adopted the factual findings contained in the committee’s report. Based on these facts, the board agreed with the committee’s determination of rule violations, except that the board found respondent also violated Rule 8.4(c) in the Welch matter. The board reasoned that respondent’s conduct in that matter was dishonest because she converted to her own use the funds she received from Ms. Welch that were to be used exclusively for costs.
The board determined that respondent’s conduct was knowing. She violated duties owed to her clients, causing them actual harm by depriving them of funds rightfully belonging to them. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is disbarment.
In aggravation, the board found a dishonest or selfish motive, a pattern of misconduct, and indifference to making restitution. In mitigation, the board found the absence of a prior disciplinary record and inexperience in the practice of law.
Upon further review of this court’s prior jurisprudence involving similar misconduct, the board recommended respondent be suspended from the practice of |inlaw for one year and one day, with six months deferred, followed by two years of probation with the condition that she attend Ethics School. The board further recommended that respondent be required to make restitution to Ms. Welch and resolve the fee dispute with Ms. Johns through arbitration by the LSBA’s Fee Dispute Resolution Program.
Three board members dissented, and all would recommend respondent be suspended from the practice of law for one year and one day, with no time deferred, followed by two years of probation with the conditions that she attend Ethics School, make restitution to Ms. Welch, and resolve the fee dispute with Ms. Johns.
Both the ODC and respondent filed objections to the disciplinary board’s report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.l1/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
*1246 In the Welch matter, respondent entered into a fee arrangement with her client that she describes as a “hybrid” contract, in that the agreement provided both for a ^contingent fee and an hourly rate in the event she was terminated without cause. We find that respondent erred in relying on the hourly rate provision in her contract with Ms. Welch to justify converting her client’s funds to pay her hourly fees.[5] Ms. Welch gave respondent $2,000 which was intended to be used only in payment of costs and litigation-related expenses. These funds at all times remained the property of the client and were required to be held in a trust account. Once respondent’s representation of her client was terminated, she was obliged to promptly deliver these funds to the client, unless she obtained her client’s agreement to do otherwise. See Rule 1.15(d) of the Rules of Professional Conduct.
Here, however, respondent did not obtain an agreement from her client to retain the funds previously paid to her for costs. In fact, both Ms. Welch and the bankruptcy trustee asked respondent to return the funds, but she failed to do so. Under these circumstances, we conclude respondent violated Rules 1.15 and 1.16(d) of the Rules of Professional Conduct.
In the Johns matter, we find respondent failed to complete her client’s divorce, and thus she did not earn the entirety of the fee paid to her by Ms. Johns. Respondent herself acknowledged as much in her correspondence to the ODC following the complaint by Ms. Johns. Nevertheless, respondent did not return any portion of the fee to her client, nor did she take steps to address the fee dispute through arbitration or other means. Respondent’s conduct violated Rules 1.5(f)(5) and 1.16(d).
|12Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to her clients and the legal profession, and her conduct caused harm to her clients. Under the ABA’s Standards for Imposing Lawyer Sanctions, suspension is the baseline sanction for this type of knowing misconduct.
In aggravation, we find that respondent has demonstrated an indifference to making restitution.' Mitigating factors include the absence of a prior disciplinary record, personal or emotional problems, and inexperience in the practice of law.
*1247 Given the facts of this case, we find the fully-deferred suspension recommended by the hearing committee, coupled with a period of probation, is appropriate to address respondent’s misconduct. Such an approach will afford respondent the opportunity to correct the problems which caused her misconduct, while at the same time protecting the public from future misconduct. Accordingly, we will suspend respondent from the practice of law for six months, all deferred, followed by two years of probation with the condition that she attend Ethics School. We will also order respondent to make restitution to Ms. Welch in the amount of 11S$1,330.07 and resolve the fee dispute with Ms. Johns through the LSBA’s Fee Dispute Resolution Program.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Carla M. Gaston, Louisiana Bar Roll number 25777, be and she hereby is suspended from the practice of law for six months. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a two-year period of supervised probation. During the probationary period, respondent shall attend the Louisiana State Bar Association’s Ethics School. It is further ordered that respondent make restitution to Toni Welch in the amount of $1,330.07 and resolve the fee dispute with Jane Johns through the Louisiana State Bar Association’s Lawyer Fee Dispute Resolution Program. The probationary period shall commence from the date respondent, the probation monitor, and the ODC execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executo-ry, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Moon Landrieu, assigned as Justice ad hoc, sitting for Justice Marcus Glark, recused.

. As a consequence of the Chapter 7 filing, the claims by Ms. Welch in the bank lawsuit became property of the bankruptcy estate, and the United States Bankruptcy Trustee had responsibility for pursuing the claims. 11 U.S.C. § 323; see also Jones v. Chrysler Credit Corp., 417 So.2d 425 (La.App. 1st Cir.), writ denied, 420 So.2d 456 (La. 1982).

. Respondent also included in the April 30th letter a detailed accounting of the time she spent working on Ms. Welch’s behalf.

. This sum was apparently intended to repre-ses $365 in attorney’s fees and $185 in costs.

. This court has never passed on the propriety of so-called hybrid contingency fee/hourly fee contracts, although the issue has been discussed in the appellate courts. See Gilbert v. Evan, 01-1090 (La.App. 1st Cir.6/21/02), 822 So.2d 42, writ denied, 02-1903 (La. 10/25/02), 827 So.2d 1154, and Anderson, Hawsey & Rainach v. Clean Land Air Water Corp., 489 So.2d 928 (La.App. 5th Cir.), writ denied, 492 So.2d 1221 (La. 1986), both of which approved hybrid contingent-hourly fee agree-merits. But see Curry & Friend v. Weiss, 97-2756 (La.App. 4th Cir.4/22/98), 712 So.2d 975, which concluded that the retainer agreement at issue was not a true hybrid contingent-hourly fee contract because it did not set forth when the attorney’s fee was collectable. Under the facts of the instant case, we are not required to pass on the validity vel non of the parties' arrangement, as we find respondent's actions were not permitted by the contractual provisions.